Good morning and may it please the court. My name is Michael Gray. I'm here on behalf of the Army Corps of Engineers. I really want to cover three things this morning. First, just the limited scope of this appeal. Second, the reasons why the district court's interpretation of the win actor incorrect. And third, the reasons why the district court's injunction here was improper. First, on the scope of the appeal, this really is limited to the very narrow issue of whether the district court correctly interpreted the win act as imposing just a single level of 114.76. I think it may even be more narrow depending on your position, but I don't think anybody has challenged the findings of fact. I think the question is the form of the injunction that was entered is in dispute. We can talk about that, but do you challenge the findings of fact that the district court reached? Well, the district court made two findings of fact. One, that on that date, it was 114.76 feet, the elevation of the river, and two, that this wouldn't be 114.76. We don't challenge that. We think it's an incorrect interpretation of the statute. Well, no, I understand, but I'd like to sort of see whether we can get that behind us. In other words, what I believe the court found is that the weir that was being constructed, I guess that's a rock. I've never heard of a weir before this case, but I gather it's a rock structure that backs up the water and can be permeated by water and that type of thing. So the court concluded that the weir does not maintain a pool as it existed at the time, which was 114 feet. And the second thing is that you had selected the alternative, which was the weir. So now the question is, if the weir doesn't comply factually, in other words, it's unable to maintain a surface level of 114 feet, what is the relief that the court should give? And I think you have some pretty good arguments maybe on that, and I'm happy to go there, but I just wanted to inquire first, do you dispute the findings of fact? We don't dispute that it's 114.76 on that day. We don't dispute that this wouldn't achieve 114.76. We do dispute that 114.76 is the correct reading of the statute. No, I understand. No, I understand. So it's not just a matter of the relief. No, but the statute says that you have to maintain a pool as it existed at the time of the enactment, and the court concluded that the pool could not be maintained by this weir as of the time of the enactment. It then added which was 114.76 or whatever the decimal was, which is a level above sea level. Yeah, we contend that the statute doesn't say maintain the pool at the date of enactment. It says maintain the pool for water supply. That's identifying for its use, but it says maintain the pool as it existed at the time of enactment. No, it says build a structure that's able to. Able to. Able to maintain the pool for water supply and recreational activities. The question is the weir was not able to maintain the pool as it existed at the time. That was a finding of fact. But that assumes that the correct definition of the pool is only the level of the water on the date at a particular gauge. And we say that's an incorrect definition of the pool. That the district court adopted an incorrect definition of the pool by limiting it only to one day, a very particular level. I don't think it limited it. We can go to that. I need to understand the court found that your project was unable to maintain the pool as it existed at the time. And you, in your brief, seem to concede. You say the pool you maintain is in the range of 110 to 111. And the court said the pool as it existed on that date was 114. So, and we also have the background that when they reduced the pool below the 114 level but with its variations. That all of a sudden you no longer have boat docking abilities. You have a retaining wall, that type of thing. We have the pictures of that. But that is not before us. What's before us is the interpretation of the statute. And whether the order complies with that, I believe. That's right. What's before you is the interpretation of the statute. And maybe it would be helpful for me to walk through why we think the district court's interpretation of the statute is requiring that one level from that one day as well. It doesn't require it. That's my whole point. We can debate that. But the court said in its text, it said the pool was unable, the weir was unable, use the word unable, to maintain 114 feet which was the level at the time. The order is not quite as clever. The order doesn't say unable. It doesn't use the word unable. It just says it did not maintain the pool as it existed at the time. And then it says which was 114 feet above sea level. It didn't say maintain it 114. And that obviously is a variable that throughout history it's never been precisely 114. It's 114, 115, 113. But the fact was that the weir did not maintain the pool as it existed on enactment. And the enactment as a fact matter was 114. That particular day. Now the question is that day has a built-in variable. But Congress wanted the status quo. Well, I don't think so. And maybe, like I said, maybe it helps me to walk through why we don't think that's the right way to look at the language of the statute. Because the statute itself doesn't include anything about water levels. It doesn't say an elevation. It doesn't say a water level. It does include language about purposes for supply and recreation. That's to define what the reason for the pool. But it says maintain a pool as it existed. Now the question is what other dimension of a pool, when you're going to define it, other than its surface level? Does the surface level define the geographical scope? And the surface level defines the amount of water? No. I'm glad you brought that up because this goes to one of our arguments as to why that interpretation of the statute can't be correct. Which is that a pool has many different features, one of which is geographic size. Except the size is directly related to the elevation. No, no, no, no, no. Because this dam creates the pool. It's 13 miles downstream from Augusta. What the statute says is for the Corps to choose at an appropriate location a place to build a replacement structure. So the statute allows the Corps to shrink the size of the pool by moving the new replacement structure upstream. Except if it's upstream, that's one thing. If the surface water seeks its own level, and at some point it goes up when it's influenced by the stream. But the pool is distinct from a river. And the pool is a body of water. Just a minute. The pool has a body of water. And if the elevation is 115, the pool is going to be a larger area. If the pool is 112, the surface area is going to be small. And so as it existed at the time, Congress had to have something in mind. Give me what they had in mind if they didn't. Yeah, the phrase as in existence, which is in the statute after the prepositional phrase for water supply and recreational purposes, we submit incorporates that. Mr. Gray, I'm sorry to interrupt you, but maybe you can help me here. So going back and forth with Judge Niemeyer as to what the district court intended in its order. And I want to look at Paragraph 3 of the conclusions of law, the very first sentence of that order. The judge says that the WIN Act unambiguously requires the agency to construct a structure that is able to maintain the pool for water supply and recreational activities at a very precise level, the level existing on the date of the adoption of the act. Why is that wrong? Okay. It's wrong in our view for many reasons. One, it's contrary to the way Congress always legislates with these core projects. And by the way, as I read that, he's insisting on the level that existed at the date of the enactment of the act. Full stop. Down to the hundredths of an inch, which is impossible. Exactly. It's an impossible task for the court to do. It's not the way that Congress legislates in this area at all. What Congress does with core projects typically is a purpose-driven thing. So you have all the cases we cited from the Eighth Circuit, the Ubalote case, the Tri-State Water Rights case from the Eleventh Circuit, the Kruppel case from the Fifth Circuit, where the courts have uniformly said Congress gives broad purposes and goals to the core, and then the core has flexibility in achieving them. When Congress wants specific water levels, it says so specifically. Let me point out something. That very sentence comes right out of the statute. A structure that is able, that has the capacity, that means, to maintain the pool at 114. And that's what the statute says. That has the capacity to. And the fact-finding in this case says the WEIRD does not have the capacity to maintain the pool at 114. So that's, to me, the only question in this case is what is the relief? Is it appropriate relief? Well, it's the only place in the district court's order where it actually quotes the full language of the statute and says able. The injunctive relief doesn't. It says at least four times the 114.76. It says it's a very precise level. It says it's standard. Well, this says it's precise, but it said it has to be able to maintain it at that precise level. It doesn't say it has to be at that level. But the purpose, as I understand it, of the act is to maintain it for certain specified purposes, right? And so it doesn't, it seems to me that it wouldn't matter, and for Congress's intent, if the level were at a different height so long as the purposes were satisfied. Right. And that's right because, you know, they don't even, in their brief, they don't even say. And they can litigate that. I mean, at some point you'll get to litigate that. But you haven't gotten there yet. Right. I mean, that's where I started is this is an APA review. We haven't even filed the administrative record yet. The court just said, well, I see this. It looks clear. I'm not going to worry about what the facts here are. And the thing that is important to keep in mind about that is that Congress just doesn't do this in this particular way. To read a water level of any kind into this statute is to place a judicial gloss on the statutory language. There is nothing about a water level in the statute. How do you interpret as it existed at the time of enactment? What do you look at as the time it existed? That phrase limits the water supply and the recreational activities that the Corps has to build the structure to serve. So, for example, if Augusta, there were evidence that Augusta is growing and that there's going to need to be a new water supply intake, the Corps does not have to maintain a pool that serves that new water supply intake. It doesn't. You know, you keep doing, you did that throughout your brief. The statute doesn't say it has to maintain it at that level. And the court didn't conclude that as a matter of law. It concluded, Congress said it has to be able to do so. And the ability to do so defines the structure. And there's a concession in this case that the project is unable to maintain a pool of a size that can be measured from the surface. That's the only measurement of the size of the pool you can have. There's no concession that it doesn't maintain a pool. There will be a pool. There will be a pool that serves, determined will serve the functions that Congress specified in the statute. The Corps' interpretation doesn't require adding anything to the statute because the purposes of water supply and recreation are right there. In that provision, and they're different from Provision 1, which includes a third purpose of navigation. But the district court's interpretation and their interpretation requires some judicial oversight to decide, well, what should the level of this river be? And that is an area that is typically deferred to the Corps of Engineers. Congress wants the Corps to decide what water level is necessary to serve the purposes that Congress wants to achieve and how best to achieve it. I mean, this is, keep in mind, a project to pass endangered fish to their historic spawning ground and to do so without inducing new flooding. It's obviously a compromise, and South Carolina insisted that the pool be maintained for various reasons. They also had navigation interests in it originally. But Congress passed it with the idea that the pool would be maintained as it existed, the status quo, as it existed at the time of enactment. You can do whatever you want. I don't understand why you didn't raise the weir five feet. What's wrong with that? Well, if you look at the evidence, well, if you look at the environmental assessment, they looked at higher weir heights and it induces flooding upstream. I mean, that's why you don't do it because you're losing a gate. You're losing the gates if you put in a weir. You're losing some of the flood control ability. You build that weir too high. You just build it five feet higher. Now you've induced flooding upstream. And so the Corps is weighing all of these interests. How do we achieve in the lowest cost possible the best fish passage structure that doesn't induce new flooding and that maintains the functions of the pool? That is in the heart of what the Corps of Engineers usually does and the way that Congress instructs the Corps to act. Congress doesn't typically require particular water levels. And when it does, it says so. It lays it out. These are the water levels that we want in this particular place. When it gives functions, it intends the Corps to serve those functions. I see my time is up. I'll reserve it. All right, fine. Let me ask you a couple questions. This is an interlocutory appeal? It's not interlocutory in the sense that the district court thought it resolved everything and entered what would be full judgment for the parties. There were six claims or so. There are other claims to be decided. There's only one claim resolved. Yes, that's correct. The as to injunction was based on the one claim. Right. So there are five other claims still pending. Yes. So it's not a final order appeal? Well, certainly the court has jurisdiction under Article 92 for an injunctive appeal. I'm not arguing jurisdiction. I'm just trying to figure out what kind of appeal it is. It's an injunction appeal, which makes it an interlocutory appeal. And your claim in the injunction is flawed legally because the court misbehaved legally in multiple ways, right? Correct. And the relief you want is what? Reversal of the judgment. The district court did enter a final judgment. I know he put the words reversal of judgment, but the only claim he dealt with was the one claim. Correct. We want it sent back to the district court to deal with all the... All right. There are five claims that were not addressed. Yes, those should be addressed. We want it sent back to the district court. Well, they can be, but what relief do you want? We want that judgment reversed, the injunction vacated, the case sent back to the district court with a correct interpretation of the Winn Act. Which is that it has to serve the functions to have the administrative record, decide whether those functions, the court reached an arbitrary conclusion about those under the administrative record, and then to decide all the other claims in the case. There's a lot of litigation to go on. There's a lot. If we take your side, if we were to take your side and think back... There's many hurdles before this case. There's still, in this case, a great deal of litigation to go on. Yes. All right. Thank you. Thank you. All right. Who's up? Mr. Johnson? Yes, Your Honor. Thank you, Judge Niemeyer and members of the court. Good morning, and may it please the court. I'm Chad Johnston, here today on behalf of the South Carolina parties to this appeal. I'll be splitting my time with my colleague, Mr. Moore, who represents the city of Augusta. For situational awareness, I plan to use my time to address the statutory construction issues. Mr. Moore plans to use his time to address the injunction and deference issues. I did want to address straightaway the court's argument that the pool must be maintained at a constant elevation of 114.76. We don't think that that's an accurate reading of the lower court's order, and that's not South Carolina's position. Do you agree that the district court was wrong in that regard? Your Honor, the findings of fact is included at paragraph one of the order. The court's conclusion of law... Can you answer my question with a yes or no, and then explain if you want to? Your Honor, we think that the 114.76 was necessarily the average for the date of enactment. The court's conclusion of law there says that it must... Where are you? I'm sorry. Where are you? What are you reading from? It's paragraph eight of the order. The court's conclusion of law says that the court must maintain the pool existing on the date of enactment. There's no reference to a specific elevation there. But, of course, 114.76 did not reflect static depth on December 16, 2016. It was the daily average. Congress's reference was... It's also not the depth. The depth can... You could fill it in with silt and have the same pool. So what it is, it's elevation. Above sea level. Correct, Your Honor. Congress referenced a specific day, not a specific moment in time. It's the level of the pool's surface. Correct. And, in fact, the court's implementation guidance refers to the elevation on December 16 as an average for the day. That's at 1245 and 46 of the record. Can I just ask just a basic question? Why is it so critical to focus on the pool's water level as opposed to the function? I mean, you can litigate down the road, if I'm not predicting where this case is headed, the fact that the court's proposal for maintaining the pool simply doesn't satisfy the basic functions that have been historically conducted in this area. Why isn't that sort of the bottom line question here? Your Honor, we think that the court's focus on the functions rather than maintaining the pool as in existence on the date of enactment necessarily reads out of that antecedent, and I'll get into the statutory construction more in a moment, but reads out of that antecedent to maintain the pool. We submit that the guiding principle of this act is to maintain the pool. Maintain the pool at what? Maintain the pool as in existence on the date of enactment. What does that mean to you? Your Honor, we think that that means the average. It should be designed that December 16th referenced in the statute was intended to be a design threshold, and we think it's frankly somewhat curious for the court to criticize South Carolina and Augusta as to our focus on specific water elevations because that's precisely what the court did in developing each of its project alternatives. They modeled the depth for each alternative, both at the lock and dam structure and at the 5th Street Bridge. They provided a specific elevation for each alternative. Those are at pages 164 to 167 of the record. Is the court now claiming that those numbers are static depths? Well, of course not. They're averages, just like 114.76 is an average. When they tested the pool of the weir, they tested it by reducing the surface level. That's correct, Your Honor. And, of course, the results were destruction of boating capacity and retaining walls and that type of thing. It was an unmitigated failure, Your Honor. Where in the statute do you see that Congress was talking about averages with respect to water depth? Your Honor, it referred to a specific day, not a specific moment, and necessarily that suggests that it had to be the average for the day, the specific elevation for the day. That's South Carolina's contention. Before wading into the statutory construction issue, I did want to comment briefly on the impact that this project would have on the local communities. Since 1937, the 17-mile pool has been created between Georgia and South Carolina. It is the true lifeblood of these communities. Citizens use the pool for recreation and commerce. All right, so see, now you're getting into the function, right, the purpose, and isn't ultimately that a separate question from the depth of the water in the pool? I don't think so, Your Honor, because when Congress legislated that it had to maintain the pool as in existence on the date of enactment, it necessarily included the historic uses of Augusta and North Dakota. I don't disagree with you, but that's still a functional argument, right? What am I missing here? It seems ultimately what matters is, is this body of water going to be able to do the same thing that it has historically done after the Corps of Engineers finishes its work? Isn't that the question? Your Honor, we think that the pool must be maintained, and that if it is maintained, then that necessarily recognizes the historical use. That's one way to do it, but the Corps has a different way. We dispute, Your Honor, that, for instance, water supply is achieved under the Corps' proposal. The record reflects that the lower pool will have an adverse effect on water supply. The Corps conducted a very limited review of the direct intakes, water intakes, but it failed to take into account the more broad usage or commercial uses there. But even that limited review showed that lowering the pool would propose to show cavitation around certain of those water intakes, would require extensive and expensive upgrades of the water supply. The PSC Nitrogen, which is one of the unique to this appeal, indicated that under the 260 option, water levels will regularly fall below the level necessary for their facility to function. You can't square that with the Corps' pronouncement that no water use will be adversely affected. So even if you look, Judge Diaz, at those functions. Well, but I can't. The district court can, and it didn't because it read the statute the way you read it. I think the district court, as I said, necessarily viewed that maintaining the pool would take care of those historic uses and functions of the pool and did so. I did want to say that the specific standard, the Act gave a specific standard to judge the maintenance of the pool here. It says maintained as in existence on the date of enactment. That number is consistent with the easements that South Carolina secured for the Lock and Dams construction. They required the Corps to quote maintain a pool elevation of 114.5 feet. It's also consistent with the average depth of the pool from 2016 to 2018, which was 114.85 feet. The gauge summaries are included in the record at 561 to 575. It's also consistent with the Corps' own mitigation plan for the SHEP project. There the Corps represented that they quote maintain stable pool elevations near 115 feet. Finally, it's consistent with the Corps' own operational plan for the Lock and Dam. That's at page 1451 of the record. That plan states that the pool should be maintained between 115 and 116 feet. So, the Corps' contention that it's historically maintained at a level between 111 and 114 is simply incorrect. It's not supported by the data or record. To get into the limited time that I have into the width of the statute, the operative portion of the Act begins with a concise integrated clause, maintain the pool for water supply and recreational activities. That integrated clause is then followed by a comma with a limiting clause or phrase as in existence on the date of enactment. The Corps suggests employing the rule of last antecedent. We think that there are several problems with applying that rule here. First, the Supreme Court has said that it's context dependent and it has expressly declined to apply the rule where, like here, the antecedent is a part of a concise integrated clause. Maintain the pool for water supply and recreational activities is that type of clause and to use the parlance of the Supreme Court in the Scion and Facebook cases, it is a quote clause that hangs together as a unified whole. In fact, the Corps doesn't even faithfully apply the rule of last antecedent because if it did, that limiting clause or phrase would only apply to recreational activities, not water supply. Second, as I said, it ignores the comma separating those two clauses. And third, it reads the verb maintain in its direct object the pool out of the antecedent. Maintain is a transitive verb. Was our court written on the rule of the last antecedent? Your Honor, I was not able to locate anything directly, but the Supreme Court has written on it extensively and said that it applies. It does not apply in particular where there's a comma separating the antecedent from the limiting clause. Just one last point. I see my time is expiring. Maintain is a verb that requires a point of reference for effect. If you don't know what you're comparing an alternative to, then you can't maintain it. It clearly means the status quo, doesn't it? Your Honor, you pointed that out, and that's correct. This materially alters the status quo. The limiting clause is supposed to directly inform the Corps' analysis of its requirement to maintain the pool. And lastly, Your Honor, I would just say the Corps appealed from the district court's order denying its motions to dismiss. Those motions challenged the lower court's jurisdiction and debriefs to this court. They didn't raise or argue the merits of that order or the jurisdictional issues decided by it. I think under this court's precedent in Rule 28a, those aspects of the court's appeal should be being banned. Why doesn't maintain the status quo refer to the pools for the purpose of the project as opposed to the water level? Your Honor, why doesn't the word maintain, maintain the status quo? You were talking to Judge Niemeyer about maintaining the status quo. And I guess in your view of the status quo, that's talking to the daily average, the daily range of the water level that you talked about. But why is it maintain the status quo related to the purpose of the project to begin with? Your Honor, I think it applies to everything, including maintain the pool. The Corps' reading would read maintain the pool out. We think that our reading, if you maintain the pool as I indicated, it necessarily includes all of the local activities, historical activities that have taken place and are taking place. If there are no further questions, I'll refer to my colleague. Mr. Moore. David Moore for the City of Augusta, Your Honor. Thank you so much for the opportunity to speak with you all today. I'm going to address the issue of deference first. Agencies don't get deference when they change their legal positions. And I just heard Mr. Gray say that DOJ stated that the statute does not define water levels. That was his statement to the Court a few minutes ago. He made that reference several times. Also, Your Honor, in the briefs. Hasn't the Corps, in seeking to carry this out, always defined the pool by terms of its elevation? Yes, Your Honor. And in fact, even more poignantly here, on August 9, 2017, in the implementation guidance, interpreting the WIN Act, the South Atlantic Division stated the district should identify in the analysis the average elevation of the pool as of 16 December 2016. Exactly what the lower court did. Where is that? This is in Act 1246. That's an implementation guidance. This is in response to questions from what I'll call the lower portion of the Corps of Engineers, the Savannah District, to their bosses in the South Atlantic Division. And what they proposed was, hey, we don't really have to maintain this pool. Functionality is fine. The South Atlantic District demurred and said, well, the district should identify in the analysis the average elevation of the pool as of that date. And that's what the district court did here. So I would question as to how can the Justice Department and the Corps take a position now that the statute doesn't say anything about water level elevation when the very first interpretation that was provided stated you need to find out the water elevation here. It's very inconsistent. So for that and other reasons I'm going to go into, if you're maintaining a pool, and in relation to the use of the pool, in this case recreation and water intake, but maybe navigation or other possibilities too, if you're maintaining a pool, what other dimension is there to maintain a pool? Your Honor, I think we just look simply to the Department of Justice's brief in this matter. How did they describe the pool? So I'll go to page 10. They described the pool as a 17-mile pool above the dam creating a pool of water abutting Augusta. So there's a dimension. We have a length there. We have the size of the pool. Then we go to page 36. And using standard definitions, the Department of Justice says that a pool is a portion of a stream with water deeper than the surrounding area. So we've got two dimensions now. We've got a length and we've got a depth. And then if you look through the briefs, we have a third dimension, which is location, and that's generally in Augusta. So what I would submit is, you know, when counsel is talking about their common belief of what a pool is, they're using length, they're using depth, and they're using location. See, length is a direct correlation, a direct correlation to its elevation, because the surrounding land, which creates the pool, defines the pool, changes as you raise the elevation or lower the elevation. And so that the elevation is the only constant by which you can measure a pool. And so if you lower the pool, the circumference is going to be smaller. The area is going to be smaller. If you raise the elevation, the circumference is going to be larger, and the area is going to be larger. So when you're maintaining a pool as of a given date, you're maintaining the circumference, you're maintaining the area, and the elevation is the only constant that can measure that. Your Honor, we would go so far as to say we can take judicial notice of the James River, which flows through this beautiful town. It's a beautiful river. But you can lose elevation as much as an inch, and you may lose many, many feet of elevation, which is exactly the situation. A river might be distinct from a pool. Absolutely, Your Honor. Mr. Moore, can I take you back to that Joint Appendix 1246 that you talked about? First of all, can you tell me what those acronyms are, SAS and SAD? SAS is the Savannah District, so that would be sort of, I would say, the lower unit of regulation or authority within the Corps. The SAD is the South Atlantic Division. They're in Atlanta, Georgia. Okay. And it's the SAD response that you quoted at the very bottom there that said the district should identify in the analysis the average elevation. Is that right? Yes, Your Honor. Okay. The next page, it says at the very end of the last sentence, that said, SAD agrees the intent is to maintain the functionality of the pool and not a specific elevation. Yeah, let me address that, Your Honor. So Savannah, SAS, asks, well, we believe that the WIN Act means to maintain to the maximum extent possible, and you notice their bosses didn't agree with that in SAD, the functionality. So that was what they were basically asking, hey, can we use functionality? And if you notice, the entire context, you know, they weren't looking at litigation at this point. They weren't looking at a judge's order like we are, 114.76, which I agree is a fluctuating limit and is a daily average. And the court did use the term which. I will point that out, and hopefully I'll get to that. It didn't say that, but which. But the context of this discussion, you know, four years ago is regarding mitigation and impacts on water supply and other features. And so the question is, if we do go below this, can we use mitigation for that approach? And SAD says, yes, maybe, but you've got to run it by us first. You know, see, that's in that same paragraph. And then it says, SAD agrees the intent is to maintain the functionality of the pool and not the specific elevation. Now, my read of that is it has to do with the discussion about mitigation, which really is the predominant discussion throughout those two paragraphs. I don't think at that point in time, you know, they were thinking about the issues we are today. But my main point, and I think it's uncontrovertible, is that the bosses at SAD said, look at the elevation. But here we have today the Justice Department saying, ah, elevation is irrelevant and, you know, we're reading it into the statute impermissibly. Well, that's what the judge did below. And so we can't give deference to an agency that, on the one hand, four years ago says, yeah, look at the elevation, and then comes into the Fourth Circuit now and says, no, no, no, no, no. Elevation is irrelevant. It's only about functionality. Well, then what were these people thinking about? And so I don't know that he would say that elevation is completely irrelevant because that informs the functionality, right? At some point, if you have any water in the pool, you're not going to be able to do anything. When he tells the court that statute doesn't address elevation, I think he's trying to advise the court that you don't need to consider elevation at all. I do a lot of water work. If you want to provide water supply, I have a little six-foot-wide creek that can provide water supply. The court does a lot of water work, too. Pardon me? The court does a lot of water work. Tons. I work with them all the time. They've been doing it for a couple hundred years. I will. You might not know this, Your Honor, but Augusta has the- You're not a couple hundred years old, are you? Augusta has a canal built in 1850, and it has been running continuously since that time for its same primary purpose, and it has three hydropower dams on it. So we have PhDs and engineers that also run a water system. We're sort of like forests and trees. We're the trees in Augusta, so we watch what's going on every single day. We know the elevations. We know the flows. The Corps, I don't think they have any one station, but we're there. We also care about the sturgeon, by the way. We have a PhD biologist on staff. He's very concerned about this whole plan from a biology perspective. I see my time is running out, so I'd like to just quickly go through a few items. Just to close on deference, the Supreme Court in Kaiser v. Wilkie stated that the courts have to avoid deferring to a convenient litigating position or post hoc rationalization, and I think it's clear that's what we have here, Your Honor. I'll also point out that the Corps is required to hire and retain under the 2007 WRDA an independent peer review panel, which they did. Had three PhDs on there. Now, these aren't lawyers, but they questioned in five different instances whether or not the approach that the Corps took complied with the WIN Act, specifically related to elevation. Furthermore, they pointed out that the plan that the Corps put together actually presented lethal potential harm and damage to the sturgeon, and you won't believe this. In citing why that's true, they cited a situation on the James River where four sturgeon that passed away were killed because after they spawned, they were so exhausted, they came downstream and they ran head-on into rocks. And what the peer committee said is that this approach and this proposal has five or six foot high ledges. The sturgeon are likely to also be exhausted, to run into those and be killed. And they're very concerned about that, as is Augusta. So I just wanted to raise that point, Your Honor, that we're not the only ones that don't agree with the construction of the Act. We also don't agree with the construction of the Fish Passage as well. I won't go into a tremendous, I only have 58 seconds, so I just want to say a few things about the injunctive relief, Your Honor. If you look carefully at the injunctive order, it does say, as Judge Neumeier pointed out, it does mention that the reservoir elevation, which was in effect on that date, which was 114.76. It says which. Well, that's an observation, I think. The biggest failure, I think, in the order is that it tends to suggest it has to maintain the level as of that date. And the Act says it has to be able to maintain the level. And I think the ability to maintain the level puts in the notion that the precise level isn't always going to be achieved because of rainfall and drought or whatever. But it still has to achieve a pool of that size. And, of course, in relationship to recreation and water supply. And we know when they dropped the level, it adversely affected the water supply and the recreation. Both docks did not have two feet, they had mud, as shown in the pictures. And everybody seems to conclude it failed. They couldn't even demonstrate the levels they were going to achieve. And so, I don't know. Clearly, the pool they propose is not the pool as it existed at the time of the enactment. The pool they propose is not capable of it. And that was a finding of fact. Now the question is, if you find that fact, what's the remedy? And I'm sort of sympathetic to the government in the language of the order. It would have been much cleaner if the court added the word able to maintain the level, which was. Which was is just a factual observation. Yeah, your honor, you're exactly correct. And so, I'm no expert on defining and non-defining clauses. But in looking things up, use of the term that specifies a specific level. So, if the... No, no, clearly that is an observation. It's saying which is an observation. The level which was. Yes. And so, Congress used that when they talked about the Wynne Act and maintaining the pool. That was in existence. So, they were very specific about that pool. Now, they didn't know if it was 114.76 or whatever at that point in time. As you stated, they knew generally the dimensions, the location, and maybe something about the depth. But the court, I thought, cleverly used the term which. Because that's a non-defining clause in the English language. And so, I think the injunction is actually correct. And I will also say this. The court's injunction could have been a lot more widespread. They could have enjoined anything with respect to option one. Remember, there's a whole set of option one. Except the only thing before is the court found as fact that the other option was selected, the Weir option. Yes, your honor. And so, that's all we're dealing with. We're not dealing with environmental questions here either. That's background. What we're dealing with is whether the option that they selected is able to maintain a pool for purposes of recreation and water intake that existed at the time of enactment. Yes, your honor. So, our position, and we ask the court to please affirm, is that it's clear, everyone agrees, the elevation upon the date of the act is 114.76 NGV. Let me ask you about this. In the findings, the court said there is no dispute that the Army Corps' plan, alternative 260, fails to do that. That is, to maintain a pool existing as of the day of enactment. Is that conceded? What is the court referring to? It seemed to concede it in its brief, too, because it said the pool elevation that they would achieve is around 110 or 111, around there. Yes, your honor. On page 18 and 36 of the brief, the Department of Justice has stated that the elevation will fluctuate to as low as 110. And I've provided the court with a document, APP 186. It came in, I believe, filed on Wednesday. I hope you have it. And this has the Corps of Engineers' actual depiction of elevations. And they, in fact, had a starting elevation for their alternative, the alternative they selected, the alternative the judge enjoined. Their starting level is 114.0 NGV. Okay, so that's right there, that's .76 feet below. However, I'll point out that when you look at their numbers, they say the new Savannah, Bluff, Lock, and Dam level, this is at a 3,600 CFS flow, is 110.5, 110.5. So you'll see in the brief the Department of Justice has said, oh, well, it's only a three-foot difference. Five feet almost. Yeah, my math is 4.76 feet based on what they write. So, you know, I think it's a little disingenuous and it's very harmful. Also, the record demonstrates that going down to that level is detrimental to the use of that pool, which was for recreation and intake, water intake. That's right. The pool elevation at this street, the judge went through this in great detail, was 11.9 feet. If you take 4.76 feet off of 11.9 feet, that's a 40% reduction. And the Corps says it's three feet. They're 50% off. It's 4.76. And, you know, if we can't agree on basic math on these things, then I don't know how we can progress. We have a lot of information in the record and in our briefs about the harm to Augusta. It includes losing the park. We have a park, the new Savannah, Bluff, Lock, and Dam park. It's a 50-acre park. Sixteen acres of it will be turned into a flood area, flood bench area, completely gone. All right. I think we've gone through the red light here. I appreciate the extra time. Mr. Gray. Thank you. I don't think it's particularly relevant, but since it's been brought up so many times, I want to address the photos that are in the record. And Judge Niemeyer, you know, you've said several times. What was important to me was the finding, and you're seeming to acknowledge that the WEIR would not maintain the level of the pool at the time. And you basically avoid the consequence of that by saying, I look at a functionality test rather than the level of the pool. That's your position, basically. In other words, if you construe the statute to say, we can put the pool at any level so long as we can serve functionality and provide water. And Congress clearly wanted a pool that existed at the time of enactment. That has meaning. Well, again, we think the language, the pool for water supply and recreational activities. Well, that's what it's going to be used for. That's irrelevant. They're describing that in the statute. But they added this very specific language that said that existed at the time of enactment. And I think I've been over that, so I do want to, you know, I think the court probably understands my position on that from the first round. So I do want to address a couple of other things because I think it's important to contextualize those photos and what happened there because you had a test to try to get to the level that would be predicted. But because of conditions at Stevens Creek Dam, which is a re-regulation dam upstream, the test didn't show what the court predicts the level would be. Stevens Creek Dam at the time was undergoing repairs, and the flashboards were down. When Strom Thurman Dam, which is further upstream, generates electricity, there's big pulses of water up to 18,000 CFS. Typically, Stevens Creek catches those and then evens them out. They have an even flow in the river. On the days that they were doing the test, it just so happened that Stevens Creek wasn't doing that. And so when Strom Thurman stopped generating, the flow was reduced to just a couple hundred CFS. So you had conditions that were as low as one foot or more below what the court predicted. And this is all in the after-action report, which is in the appendix at page 745. It goes through exactly why those photos aren't representative of what the court actually thinks would happen. But even at that lower water level, it's not true that water supply was affected. The water supply intakes in conjunction with all those water supply folks were not affected at that level. There was no cavitation of the water supply intakes. It's true. They went to a few areas where the river's low. They took pictures of docks in mud. But the court does not believe that that represents the condition after this project would be put in place. And I just want to make that clear. I have a couple other points. You've talked a couple of times about how the surface elevation is really the only way to measure it. But I said it's a constant. It's the only constant in measuring a pool. In other words, the area and the circumference are in direct relationship to the elevation. But what I want to point out is the elevation here that we've been talking about, everybody's been talking about, is at a particular gauge at a particular place just upstream of the dam. Well, Congress authorized the court to build a replacement structure at an appropriate location. If the appropriate location were on the other side, upstream of that gauge, the pool would be smaller by that much, and that gauge would read much lower. But water seeks its own level. And if it's a pool, a single pool, I mean, there may be pools for various things above, but the pool of water behind that dam is going to be level. Right, but the dam's going to be in a different place. That's all right. But level is still above sea level. It can't mean what they say, though, because the only way to get 114.76 at that gauge is to build the dam where it is now. If you build it at a different place, you've changed the pool. You've shrunk it from a 13-mile pool to, say, a 10-mile pool. I know, but it can still be at the same level above sea level. Not at that gauge because that gauge will sit downstream of the pool. You're implying that it affects depth, and the measurement is not depth. The measurement is a level of the surface above sea level. Right, but the surface of the water above sea level. Above sea level, right. So if you build the dam upstream, the water downstream will be lower. A mile upstream or you're a mile downstream, a pool level would be the same if it's at 114. I don't think that that's right at that gauge. I think if you built it upstream, you would necessarily lower the surface elevation downstream because you're not holding water there. The water is going to flow there. The water is only going to be held behind the dam. I say my time, but it's imperative that I make clear that even if the court ends up agreeing with them on the merits, that it is imperative that the court get rid of the injunction. The injunction is unnecessary and unwarranted under the Supreme Court. It's been very clear in Monsanto. Declaratory relief is enough. There's no showing, no chance that the Corps of Engineers is going to build a project if there's a declaratory judgment from the district court or this court saying it doesn't comply with the law. So that injunction has to be vacated. I think it's a legitimate argument. The question is now we're getting into what the discretion of the court is. In other words, let's assume, and you have to assume with me on this, that, number one, the court found that the proposed structure cannot maintain the pool. And so now the question is what relief do we have? And the court and you have already selected a structure that will not satisfy the statute according to the court. The court decided to join you on doing that structure. The question is would the court's relief be better if it's just declaratory action and says, it seemed to me it could tell you to stop doing that program and come back with a new one. That's right. It has to do that under the Administrative Procedure Act. Yeah, but isn't that what it did? No. This is Administrative Procedure Act review. And so you have a particular project that the Corps has selected and said this is our project. Review our compliance with statutes under the Administrative Procedure Act for arbitrary and capricious review. Under the normal course in Administrative Procedure Act cases, if a court says, well, this doesn't comply with something, then you issue a declaratory judgment. You say you can't do that project, and then you remand to the agency to decide what to do. Courts do not issue injunctive relief, and this is the Monsanto case from the Supreme Court. It's exactly on point. It's exactly what they said. If there's no need for an injunction, if declaratory relief would be sufficient, then that's enough. It's up to the Corps then to decide what to do. How does that affect you? What's the difference for purposes of you between those two forms of relief? There's a couple of different ones. The principle is important to the government that you don't issue injunctive relief without looking at the equitable factors and where declaratory relief would be sufficient. So just as a legal principle, that's an important principle for the government to maintain. In this particular case, it gives the Corps flexibility to attempt to design something. So if what the Court says is 114.76 is not a required, all-the-time level, you've got to get to the basic... It didn't say that. The Court didn't say that. The Court ordered compliance and said... If this Court clarifies that that's not what it says and says you've got to go within the range that it used to be and then remands to the Court, now the Court can design a project that attempts to comply. But with this injunction as written, where, I mean, you can say he didn't say it, but 114.76 is in the relief, and so... Multiple times. Multiple times. Four times in the order. He says it's a standard. It's in the relief. The Corps looks at that and comes to the Justice Department and says, we can't do this. It's very important that the Court make clear that that's not a restriction. Send it back to the Corps at that point. Now, of course, our preferred solution is that you agree with our interpretation of the statute and that the functionality of the pool is what Congress was really getting at because that's what it said in the statute and didn't refer to water levels. But if you disagree, doing away with the injunctive relief is vitally important, so we would ask that you do that. Thank you.
judges: Paul V. Niemeyer, Robert B. King, Albert Diaz